1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11  Ozer Holdings, LLC, and                    No.  1:24-CV-00210-KES-CDB
    Joint Properties, LP,
12                                             ORDER GRANTING IN PART AND
                       Plaintiffs,             DENYING IN PART DEFENDANT'S
13                                             MOTION TO DISMISS
              v.
14                                             Doc. 9
    Citibank, N.A.,
15
                       Defendant.
16

17

18        Plaintiffs Ozer Holdings, LLC ("Ozer"), and Joint Properties, LP ("Joint"), filed a

19  complaint against defendant Citibank, N.A. ("Citibank") on February 15, 2024, alleging Citibank

20  violated Cal. Comm. Code § 11207 and breached its duty of care regarding bailment of plaintiffs'

21  funds.  Doc. 1.  Citibank moves to dismiss for failure to state a claim under Federal Rule of Civil

22  Procedure 12(b)(6).  Doc. 9.  The motion is fully briefed.  Docs. 14, 15.  For the reasons

23  explained below, Citibank's motion is granted in part and denied in part.

24  ///

25  ///

26  ///

27  ///

28  ///

1

1    **I.        FACTUAL BACKGROUND[1]**

2          Ozer is a limited liability company organized and existing under New Jersey state law.

3    Doc. 1 at ¶ 1.  Ozer has one member, Mosher Rhein ("Rhein"), who is a resident of the state of

4    New Jersey.  *Id.*  Joint is a limited partnership also organized and existing under the laws of New

5    Jersey.  Doc. 1 at ¶ 2.  Rhein is also Joint's sole general partner.  *Id.*  Citibank is a national bank

6    that regularly does business in the Eastern District of California.  *Id.* at ¶ 5.  The events giving

7    rise to the action occurred in Kern County, California.  *Id.* at ¶¶ 5–6.

8          On February 9, 2023, an unknown individual emailed Ozer a letter purporting to be from

9    Hexagram International, a company that had previously loaned funds to Ozer totaling $175,000.

10   *Id.* at ¶ 7.  The emailed letter purported to be signed by "P. Siller."  *See* Doc. 1 at 16, 18.  Philip

11   Siller ("Siller") was the principal of Hexagram.  *Id.* at ¶ 9.  The letter requested that Ozer repay

12   the outstanding loan by sending a wire to a Citibank account number ending in 3874 ("Citibank

13   Account").  *Id.*  Ozer alleges that, unbeknownst to it at the time, the Citibank Account did not

14   belong to Hexagram and had been opened under another name by the individual.  *Id.*  Ozer

15   alleges, on information and belief, that the Citibank account was an individual account and not a

16   commercial business account.  *Id.*  In reliance on the February 9, 2023 email, that same day Ozer

17   wired $175,000 ("Ozer wire") from its account at Chase Bank ("Chase") to the Citibank Account.

18   *Id.* at ¶ 8.  The Ozer wire did not mention Hexagram but stated that payment was for "yossi

19   Siller."

20         The unknown individual also sent a letter via email to Joint on February 9, 2023.  *Id.* at

21   ¶ 9.  The letter stated it was sent on behalf of Siller.  Siller had previously loaned funds to Joint

22   totaling $250,000, and the letter requested that Joint repay the outstanding loan by sending a wire

23   to the Citibank Account.  *Id.*  Joint alleges that the account was not opened in Siller's name but in

24   another name used by the individual.  *Id.*  In reliance on the emailed letter, Joint wired $250,000

---

25   [1] This recitation of facts is taken from the complaint.  Doc. 1.  These allegations are assumed to
26   be true for purposes of the pending motion to dismiss.  For purposes of this motion, the Court also
     considers the exhibits attached to plaintiffs' complaint.  Courts may consider documents attached
27   to the complaint "if the plaintiff refers extensively to the document or the document forms the
     basis of the plaintiff's claim."  *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1162–63
28   (9th Cir. 2019) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

on February 9, 2023 from its account at Chase to the Citibank Account ("Joint wire"). *Id.* This wire transfer was also directed to "yossi Siller." *Id.* Within two days of sending the wires, Rhein, the principal of both Ozer and Joint, learned that Siller never sent either letter requesting payment and that the Citibank Account did not belong to either Siller or Hexagram. *Id.* at ¶ 11.

Rhein contacted Chase and asked them to take all actions necessary to recover the wire transfers. *Id.* at ¶ 12. Ozer and Joint, on information and belief, allege that Chase contacted Citibank to advise of the fraudulent transactions, but that Citibank took no action to reverse the transfers and did not provide any information regarding the Citibank Account or identify the person who established the account. *Id.* On March 23, 2023, counsel for Ozer and Joint sent a letter to Citibank advising of the fraudulent transactions and requesting that Citibank freeze the account and provide further information. *Id.* Citibank never responded to counsel's letter. *Id.*

Citibank is required to follow the Bank Secrecy Act ("BSA") and the National Automated Clearinghouse Association's operating rules, which direct how the automated clearinghouse system ("ACH") is operated. *Id.* at ¶¶ 15–16. Citibank accepts ACH transfers. *Id.* at ¶ 17. Joint and Ozer allege on information and belief that Citibank relied on certain software to comply with its obligations under BSA and the ACH operating rules. *Id.* at ¶ 18. This software issues warnings when suspicious activities are detected in banking transactions using accounts maintained at Citibank, such as the following:

- When individual accounts are established and then used for accepting commercial transfers;

- When new individual accounts receive large lump sum deposits and subsequently, all or a significant portion of those deposits are withdrawn in a short time; and/or

- When deposits are made into accounts at Citibank which identify payees other than the Citibank account holder.

*Id.* at ¶ 18. Plaintiffs assert the Ozer and Joint wires were procured through fraud, and, on information and belief, assert that the transfers would have triggered numerous warnings in Citibank's software systems that the Citibank Account was being used for fraudulent activity, because the account was an individual account but was receiving commercial transfers and both

1    wires identified payees other than the name of the party listed on the account.  *Id.* at ¶ 19.

2         Ozer and Joint allege, on information and belief, that Citibank had actual knowledge

3    regarding the misdirection of the wires because Citibank's software would have alerted them that

4    the wires were (1) directed to an account number maintained in the name of someone other than

5    the intended beneficiaries; and (2) contained large commercial deposits.  *Id.* at ¶¶ 24, 33.  Joint

6    and Ozer also assert that Citibank knew the transactions were fraudulent because the wires were

7    expressly made to Siller (for Hexagram), yet the account was established in a different name; the

8    transfers included a code that identified them as business transactions, yet the funds were

9    deposited in an individual account; the transfers were addressed to another party (Siller) and did

10   not identify or name the owner of the Citibank Account; and the ACH payments were much

11   higher than the average account balance for typical individual account holders.  *Id.* at ¶¶ 23, 32.

12        Accordingly, Ozer and Joint allege they are entitled to recover the missing funds from

13   Citibank.  *Id.* at ¶¶ 28, 36, 37.

14   **II.    LEGAL STANDARD**

15        **A.  Motion to Dismiss**

16        The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

17   sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

18   1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

19   sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

20   F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

21   relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

22   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

23   the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.

24   Iqbal*, 556 U.S. 662, 678 (2009).

25        In determining whether a complaint states a claim on which relief may be granted, the

26   court accepts as true the allegations in the complaint and construes the allegations in the light

27   most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

28   the court need not assume the truth of legal conclusions cast in the form of factual allegations.

4

1   *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not

2   require detailed factual allegations, "it demands more than an unadorned, the-defendant-

3   unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers

4   mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

5   *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements

6   of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is

7   inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

8   defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.*

9   *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

10  **III.    ANALYSIS**

11          Citibank moves to dismiss on the grounds that Joint and Ozer fail to state a claim for

12  wrongful payment of the wire transfers and that, in any event, Citibank does not owe a duty to

13  non-customers. *See generally* Doc. 9. Citibank contends that the allegations in the complaint do

14  not establish Citibank's actual knowledge of the discrepancy between the intended beneficiary

15  (Siller) and the owner of the Citibank Account number in plaintiffs' wire transfer instructions, as

16  required to establish liability under section 11207 of the California Commercial Code. The

17  parties do not dispute that section 11207 applies to these facts. *See generally* Doc. 1; Doc. 9.

18  Citibank also contends that plaintiffs fail to state a claim for bailment, as it is a common law

19  cause of action that is preempted by section 11207. Doc. 9 at 14. Joint and Ozer assert that

20  Citibank's argument relating to duty is irrelevant because section 11207 requires plaintiffs to

21  plead and prove only that the bank had actual knowledge of the wire being received by an

22  unintended beneficiary. Doc. 14 at 14. Joint and Ozer argue that they sufficiently state claims

23  under section 11207 and for bailment.

24          **A.  Cal. Comm. Code § 11207 (U.C.C. § 4A-207 Claims) – Counts I and II**

25          Joint and Ozer's fraudulent wire transfer claims are based on section 11207 of the

26  California Commercial Code.[2] Subdivision (a) of that statute provides that "[s]ubject to

27  _____

28  [2] Cal. Comm. Code § 11207 codifies U.C.C. § 4A-207. "Article 4A of the UCC governs funds
    transfers, which includes wire transfers . . . [and] has been adopted in California as Division 11 of

                                            5

1    subdivision (b), if, in a payment order received by a beneficiary's bank, the name, bank account

2    number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person

3    or account, no person has rights as a beneficiary of the order and acceptance of the order cannot

4    occur." Cal. Com. Code § 11207(a).  Here, the beneficiary listed on the wire transfers (Siller) did

5    not match the name on the Citibank Account, and the account did not belong to Siller.

6        Section 11207(b) applies when, as in the present case, "a payment order received by the

7    beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account

8    number and the name and number identify different persons." *Id.* at § 11207(b).  In this situation,

9    the following rules apply:

> (1) Except as otherwise provided in subdivision (c),[3] if the
> beneficiary's bank does not know that the name and number refer to
> different persons, it may rely on the number as the proper
> identification of the beneficiary of the order.  The beneficiary's bank
> need not determine whether the name and number refer to the same
> person.
>
> (2) If the beneficiary's bank pays the person identified by name or
> knows that the name and number identify different persons, no
> person has rights as beneficiary except the person paid by the
> beneficiary's bank if that person was entitled to receive payment
> from the originator of the funds transfer.  If no person has rights as
> beneficiary, acceptance of the order cannot occur.

17    Cal. Com. Code § 11207(b).  Effectively, section 11207(b)(1) provides a "safe harbor" for a bank

18    that relies on the account number specified in a payment order as identifying the beneficiary of

19    the order. *TME Enterprises, Inc. v. Norwest Corp.*, 124 Cal. App. 4th 1021, 1031 (2004)

---

the California Uniform Commercial Code." *Grand Bayman Belize, Ltd. v. Wells Fargo & Co.*,
514 F. Supp. 3d 1188, 1192 (C.D. Cal. 2021) (alteration in original), *aff'd sub nom. Grand
Bayman Belize, Ltd. v. Wells Fargo Bank, N.A.*, No. 21-55146, 2022 WL 171937 (9th Cir. Jan.
19, 2022).  Division 11 "provide[s] a detailed scheme for analyzing the rights, duties and
liabilities of banks and their customers in connection with the authorization and verification of
payment orders." *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 251–52 (2007).  Under
Division 11, a "'[f]unds transfer' means the series of transactions, beginning with the originator's
payment order, made for the purpose of making payment to the beneficiary of the order." Cal.
Com. Code § 11104(a).  "'Originator' means the sender of the first payment order in a funds
transfer." *Id.* at § 11104(c).

[3] Subsection (c) is not at issue on the plaintiffs' claims.  That subsection "governs the obligation,
as between the originating party and the originating party's bank, to pay an order accepted by the
beneficiary's bank under . . . subsection (b)(1)." *TME Enterprises, Inc. v. Norwest Corp.*, 124
Cal. App. 4th 1021, 1031 n.13 (2004).

(collecting secondary sources).  In other words, "section 11207(b) plainly permits beneficiary banks to accept wire transfers where . . . there is a mismatch between the name and number [on the payment order]—so long as the number identifies an account held at the bank, and the bank has no actual knowledge of the mismatch."  *Grand Bayman Belize, Ltd. v. Wells Fargo Bank, N.A.*, No. 21-55146, 2022 WL 171937, at *1 (9th Cir. Jan. 19, 2022).

The reasoning behind this safe harbor provision is set forth in the official comment to section 4A-207 of the Uniform Commercial Code—which is persuasive in interpreting section 11207 because "the [California] Legislature adopted article 4A of the Uniform Commercial Code exactly as written" in enacting Division 11.  *Zengen*, 41 Cal. 4th at 252.  The comment explains that "[a] very large percentage of payment orders . . . are processed by automated means using machines," which results in "substantial economies of operation and [reduces] the possibility of clerical error . . . ."  U.C.C. § 4A-207 cmt. 2.  Of course, a bank supplied with a name and account number could determine whether they match, "but if a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost."  *Id.*  "Although the clear trend is for beneficiar[ies'] banks to process payment orders by automated means, Section 4A-207 is not limited to cases in which processing is done by automated means.  A bank that processes by semi-automated means or even manually may rely on the number as stated in Section 4A-207."  *Id.*

Citibank could therefore rely on the account number listed on the wire transfer order, unless it had actual knowledge that the beneficiary's name and the owner of the receiving account number were different persons.  *TME Enters.*, 22 Cal. Rptr. 3d at 153–54.  "Knowledge" means "actual knowledge," and "the beneficiary's bank has no duty to determine whether the name and account number specified in the wire transfer refer to the same person."  *Id.* at 154; U.C.C. § 4A-207 cmt. 2.  Actual knowledge of an inconsistency "does not exist unless bank personnel handling the transaction are aware that the name of the owner of the account number designated in the wire bears no resemblance to, and has nothing in common with, the named beneficiary."  *TME Enters.*, 22 Cal. Rptr. 3d at 149.  "It will be a rare case when the wire operator even knows who the named beneficiary and the owner of the designated account are.  As a result, the bank should not be

1    exposed to potential liability for accepting a wire unless there is a complete disconnect between

2    the names." *Id.* at 155. "A 'complete disconnect' is when the designated name and account name

3    bear no resemblance to each other and have nothing in common with each other." *Id.* at 156.

4    Otherwise, section 11207(b) "provides, in effect, immunity from responsibility—a 'safe

5    harbor'—for a beneficiary's bank that relies on the account number specified in a wire transfer

6    order to identify the beneficiary of the order." *Id.* at 153.

7         Taking the allegations in the complaint as true, Ozer and Joint assert that Citibank had

8    actual knowledge of the fraudulent transactions because the automated clearinghouse software the

9    bank used would have provided it with numerous alerts of their fraudulent nature. Doc. 1 at

10   ¶¶ 18–19, 24, 33. Ozer and Joint allege that Citibank therefore knew the wires were "directed to

11   the account number maintained in the name of someone other than the intended beneficiary," i.e.,

12   Siller. *Id.* at ¶¶ 24, 33. Finally, Ozer and Joint allege that the wire transfer orders indicated that

13   the payments were being sent from a commercial account, which would additionally trigger a

14   software alert notifying Citibank that the transfer was going from a commercial account to an

15   individual account. *Id.* at ¶¶ 18, 23–24, 32–33.

16        Citibank contends these allegations fail to state a section 11207 claim because there are

17   insufficient underlying supporting facts demonstrating Citibank's actual knowledge. Doc. 15 at

18   9.[4] Citibank relies on *Grand Bayman Belize, Ltd. v. Wells Fargo & Company*, 514 F. Supp. 3d

19   1188, 1193 (C.D. Cal. 2021), *aff'd*, No. 21-55146, 2022 WL 171937 (9th Cir. Jan. 19, 2022)

20   (unpublished), for the principle that a bank's processing of automated transfers without any

21   human intervention—without indicia of the bank's actual knowledge of the mismatch between

22

23   ---

     [4] Citibank also characterizes several of Ozer and Joint's allegations as conclusory because they
     were made on information and belief. Doc. 15 at 9. However, "[i]n particular circumstances, a
     plaintiff may make allegations based on 'information and belief' and still be in compliance with
     *Iqbal* and Rule 8. '[W]here the facts are peculiarly within the possession and control of the
     defendant or where the belief is based on factual information that makes the inference of
     culpability plausible,' factual allegations may be made on 'information and belief.'" *Warnshuis
     v. Bausch Health U.S., LLC*, No. 1:19-CV-1454 AWI BAM, 2020 WL 3294808, at *3 (E.D. Cal.
     June 18, 2020) (citing *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). Here, the actual
     identity of the Citibank Account owner is information peculiarly within the knowledge and
     control of Citibank.

28

8

1   the intended beneficiary and the account holder—favors the application of the safe harbor

2   provision and precludes liability.  *Grand Bayman* is distinguishable because here Joint and Ozer

3   have sufficiently alleged indicia of the bank's actual knowledge.

4        In *Grand Bayman*, the bank received a wire transfer request from Grand Bayman, the

5   plaintiff, directing payment to the intended beneficiary and providing an account number held in a

6   different name.  *Id.*  Approximately seven seconds later, the funds were automatically discharged

7   to the account number listed on the wire transfer request.  *Id.*  The district court in *Grand Bayman*

8   had the benefit of business records and declaration testimony before it, on a motion for summary

9   judgment, and the plaintiff failed to challenge the bank's evidence.  In that context, the court

10  found the safe harbor rule applied and granted summary judgment to the bank, finding it lacked

11  actual knowledge.  *Id.*  On appeal, the Ninth Circuit affirmed the district court's reasoning,

12  concluding that the bank was entitled to the safe harbor provision.  *Grand Bayman* Belize, 2022

13  WL 171937.

14       As in *Grand Bayman*, here, Joint and Ozer's wire transfers were processed the same day

15  that the requests were submitted to the bank.  Doc. 1 at ¶¶ 8 10 & Exs. 1, 4.  But the similarities

16  end there.  Unlike in *Grand Bayman*, there is no indication of the length of time the Joint and

17  Ozer wire transfers took and, even if they took only seconds, Joint and Ozer have explicitly

18  alleged Citibank had actual knowledge on account of the numerous software alerts its program

19  would have issued.  *See generally* Doc. 1.[5]  The procedural postures of the cases also differ.  This

20

21  _____

    [5] Joint and Ozer also allege that, even if Citibank did not have actual knowledge, it had
22  knowledge within the meaning of California Commercial Code § 1202 as to the *fact* that the
    intended beneficiary was different than the Citibank depositor. Doc. 1 ¶ 25.  Section 1202
    provides, in relevant part:
23          (a) Subject to subdivision (f), a person has "notice" of a fact if the person:
                    (1) has actual knowledge of it;
24                  (2) has received a notice or notification of it; or
                    (3) from all the facts and circumstances known to the person at the time in
25                  question, has reason to know that it exists.
            (b) "Knowledge" means actual knowledge. "Knows" has a corresponding
26          meaning.
            [¶] . . . [¶]
27          (e) Subject to subdivision (f), a person "receives" a notice or notification when:
                    (1) it comes to that person's attention; or
28

                                            9

1    Court is limited by the complaint's allegations and supporting exhibits in considering the present

2    motion to dismiss, unlike the more developed record the *Grand Bayman* court had before it in

3    ruling on the motion for summary judgment in that case.

4        The other cases Citibank relies on do not meaningfully undercut Joint and Ozer's

5    allegations of Citibank's actual knowledge.  In *BPi Bright Power, Inc. v. Umpqua Holding*

6    *Corporation,* 669 F. Supp. 3d 904, 906 (N.D. Cal. 2023), the plaintiff's complaint did not allege

7    any facts indicating that the bank had actual knowledge, thus, the court concluded the bank was

8    entitled to the safe harbor provision under section 11207.  Similarly, in *Serviacero Especiales SA*

9    *DE CV v. JPMorgan Chase Bank, N.A.*, No. EDCV 21-380 JGB (SPx), 2021 WL 4805448, at * 2

10   (C.D. Cal. Jul. 15, 2021), the plaintiff generally asserted that the wiring instructions named a

11   beneficiary different from the recipient account holder who received the funds but provided no

12   additional facts.  As, absent actual knowledge, banks do not have a duty to discovery any such

13   discrepancy, *see* Cal. Com. Code § 11207(b)(1), the *Serviacero* court granted the bank's motion

14   to dismiss.  2021 WL 4805448, at * 2–3.

15       The last case Citibank cites is also distinguishable.  In *Sliders Trading Co., L.L.C. v. Wells*

16   *Fargo Bank, N.A.*, No. 17-cv-04930-LB, 2017 WL 6539843, at * 1 (N.D. Cal. Dec. 21, 2017), an

17   impersonator, using email, fraudulently induced the plaintiff to send a series of wire transfers to

18   accounts at Wells Fargo Bank, intending to pay debts owed to another company.  The plaintiff

19   _____

20                    (2) it is duly delivered in a form reasonable under the circumstances at the
                      place of business through which the contract was made or at another

21                    location held out by that person as the place for receipt of such
                      communications.

22               (f) Notice, knowledge, or a notice or notification received by an organization is
                 effective for a particular transaction from the time it is brought to the attention of

23               the individual conducting that transaction and, in any event, from the time it
                 would have been brought to the individual's attention if the organization had

24               exercised due diligence.  An organization exercises due diligence if it maintains
                 reasonable routines for communicating significant information to the person

25               conducting the transaction and there is reasonable compliance with the routines.
                 Due diligence does not require an individual acting for the organization to

26               communicate information unless the communication is part of the individual's
                 regular duties or the individual has reason to know of the transaction and that the

27               transaction would be materially affected by the information.

28   Cal. Comm. Code § 1202.

                                                    10

1    brought a negligence claim against Wells Fargo, and the bank filed a motion to dismiss

2    contending the common law claim was displaced by section 11207 and that it was entitled to safe

3    harbor immunity under the statute. *Id.* The court agreed that section 11207 displaced the

4    negligence claim, reasoning that plaintiff's assertions that Wells Fargo "should have noticed red

5    flags" surrounding the transactions did not equate to actual knowledge. *Id.* at *8. The court

6    particularly noted that plaintiff did not "allege that Wells Fargo knew that the transfers resulted

7    from fraud or that the accounts did not belong to Sliders' genuine customer . . . ." *Id.* at *7.

8    However, the "red flags" the plaintiff identified in *Sliders* are different from the actual alerts

9    plaintiffs allege in the present case. In *Sliders*, the red flags included the impersonator opening

10   four different bank accounts in three separate states under the same company name, with the

11   inference being that should have triggered further inquiry by the bank. *Id.* at *4. Here, in

12   contrast, Joint and Ozer allege that Citibank had actual notice of multiple software alerts

13   indicating fraud, an allegation not present or discussed in *Sliders*. Doc. 1 at ¶¶ 24, 33. Unlike the

14   plaintiff in *Sliders*, Joint and Ozer allege Citibank had actual knowledge from the alerts at the

15   time of the wire transfers. Doc. 1 at ¶¶ 23–24, 26, 32–33, 35. For purposes of the present

16   motion, the Court must assume these allegations to be true.

17         As another court has noted: "Although a bank has no duty to affirmatively search for

18   conflicts between beneficiary names and account numbers of incoming wires, it may not escape

19   liability if, before it pays the wire, it gains knowledge of the conflict by any means but

20   nonetheless pays an individual who is not entitled to receive the funds. 'Knowledge' means

21   actual knowledge, not constructive knowledge, and is determined at the time of payment." *Peter*

22   *E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, No. 18-cv-60250-UU, 2018 WL 8334591, at *3 (S.D.

23   Fla. Apr. 4, 2018) (citations omitted). In *Peter E. Shapiro*, the plaintiff alleged that the defendant

24   bank knew that the name and account number on the wire instructions referred to different

25   persons and "knew that the person it notified was not the proper and intended recipient." *Id.* The

26   court found that allegation sufficient to state a claim, reasoning that "[d]iscovery may reveal that

27   [the bank's] knowledge was only constructive, but the [c]ourt cannot reach that conclusion at this

28   [motion to dismiss] stage." *Id.*

That analysis similarly applies here.  Joint and Ozer have asserted that Citibank's compliance software would have provided multiple software alerts giving Citibank actual knowledge of the misdirection of the wires and would have provided notice that the bank was receiving large commercial transactions into an individual account.  Doc. 1 at ¶¶ 18, 23–24, 32–33; *see also Studco Bldg. Sys. U.S., LLC v. 1st Adv. Fed. Credit Union*, 509 F. Supp. 3d 560, 568–69 (E.D. Va. 2020) (finding allegations that transactions coded as commercial plausibly indicated bank's actual knowledge of mismatch, warranting denial of motion to dismiss).

Therefore, the Court concludes that Joint and Ozer have plausibly stated claims under section 11207 and denies the motion to dismiss as to Counts I and II.

**B.  Bailment Claims-Counts III and IV**

Citibank also moves to dismiss plaintiffs' bailment claims, alleging that section 11207 displaces those claims, and, in any event, that Citibank does not owe any duty to Joint and Ozer, who were not its customers.  Doc. 9 at 7.  Joint and Ozer contend their bailment claims fall outside the provisions of section 11207, and they allege Citibank had a duty to act in a commercially reasonable manner with respect to the transferred funds.  Doc. 14 at 20.  For the reasons discussed below, the Court agrees with Citibank that plaintiffs' bailment claims derive from the fraudulent wire transfers and are preempted under California law by section 11207. Accordingly, the Court grants the motion to dismiss Counts III and IV.

"Under California law, a bailment is the deposit of personal property with another, usually for a special purpose."  *United States v. $223,000.00 in U.S. Currency*, 692 F. Supp. 3d 993, 1002 (C.D. Cal. 2023) (citation omitted).  "A bailment may be gratuitous, [ ] or based on a contractual relationship."  *Id.* (citation omitted).[6]

Joint and Ozer allege that the parties had an implied contract, that Citibank accepted the wires and benefitted from its acceptance in the form of fees and other consideration, and that, by

---

[6] "A bailment is generally defined as the delivery of a thing to another for some special object or purpose, on a contract, express or implied, to conform to the objects or purposes of the delivery which may be as various as the transactions of men."  *Windeler v. Scheers Jewelers*, 88 Cal. Rptr. 39, 43 (1970) (citations and quotation marks omitted).  "In sum, a bailment is a contractual relationship."  *Id.* (citations omitted).

1  accepting funds, Citibank was required not to act in a reckless manner with respect to those funds.

2  *See generally* Doc. 1 at ¶¶ 39–48, 50–51, 54–63, 65–66.  Joint and Ozer contend that their

3  bailment claims fall outside the provisions of section 11207 because "claims for bailment address

4  whether a bank acts in a commercially reasonable manner *after* it receives funds, rather than

5  solely addressing a bank's liability for actually receiving the funds."  Doc. 14 at 20.  Under their

6  theory, Citibank's actions in "assisting with the withdrawal of a large commercial deposit from a

7  newly opened personal account and failing to properly investigate alerts it received from its own

8  software systems was negligent."  Doc. 1 at ¶¶ 48, 50, 63, 65.

9        Joint and Ozer's argument is unpersuasive.  Joint and Ozer cannot claim that section

10  11207 covers their circumstances such that it supports their statutory causes of action, and at the

11  same time insist that section 11207 does not apply and "that [their] common-law claim is not pre-

12  empted."  *Serviacero Especiales*, 2021 WL 4805447, at * 2.  They "cannot have [their] cake and

13  eat it too," and section 11207 clearly covers the circumstances giving rise to Joint and Ozer's

14  common law claim.  *Id.*; *see also Zengen*, 41 Cal. 4th at 244, 255 ("Because the California Code

15  provides detailed rules and procedures concerning funds transfers that squarely cover the

16  transactions at issue, we conclude that the California Code does displace common law causes of

17  action. . . . This case is about unauthorized wire funds transfers.").  The California Supreme Court

18  has found that, where "the basis of [a plaintiff's] common-law claims—that [the Bank] made an

19  improper funds transfer—is unequivocally addressed by the particular provisions of Article 4A

20  [of the California Commercial Code], . . . those common-law claims are displaced by Article 4A

21  and the [plaintiff's] exclusive remedy for that claim must be found in Article 4A."  *Id.* at 254; *see*

22  *also Sliders Trading Co.,* 2017 WL 6539843, at *8 (dismissing common law negligence claim

23  asserted in context of fraudulent wire transfer as preempted).

24        Even if Joint and Ozer could plausibly allege a bailment claim under implied contract

25  theory, it runs afoul of the principle that "[b]anks do not owe a duty of care to non-customers to

26  protect them from the tortious conduct of the banks' customers."  *Id.* (citation omitted).  Joint and

27  Ozer do not allege that they were Citibank's customers.  Moreover, "a bank has no duty to

28  supervise account activity or to inquire into the purpose for which account funds are being used."

1    *Simi Mgmt. Corp. v. Bank of America, N.A.*, 930 F. Supp. 2d 1082, 1100 (N.D. Cal. 2013)

2    (cleaned up and citations omitted).

3        As Joint and Ozer's bailment claims are preempted by section 11207, and as,

4    alternatively, Joint and Ozer fail to establish that Citibank owed them a duty of care with respect

5    to their bailment claims, Claims III and IV must be dismissed. As these deficiencies could not be

6    remedied by repleading, these claims are dismissed without leave to amend. *D'Augusta v. Am.*

7    *Petroleum Inst.*, 117 F.4th 1094, 1105 (9th Cir. 2024) ("[D]enial of leave to amend is proper

8    when any supplemental information 'would fail to cure the pleading deficiencies' in the

9    complaint.") (citation omitted).

10   **IV.     CONCLUSION AND ORDER**

11        Based upon the foregoing, Citibank's motion is granted in part and denied in part.

12      1.       Defendant's motion to dismiss (Doc. 9) is DENIED as to Counts I and II. The

13                 motion to dismiss is GRANTED as to Counts III and IV, without leave to amend.

16   IT IS SO ORDERED.

17    Dated:   __June 20, 2025__

18                                  UNITED STATES DISTRICT JUDGE

14