UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OZER HOLDINGS, LLC AND JOINT PROPERTIES, LP,<br><br>Plaintiffs,<br><br>v.<br><br>CITIBANK, N.A.,<br><br>Defendant. | No. 1:24-CV-00210-KES-CDB<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION<br><br>Docs. 20, 22 |

Defendant Citibank, National Association ("Citibank") moves for reconsideration of this Court's order, Doc. 20, granting in part and denying in part Citibank's motion to dismiss, filed May 15, 2024. Docs. 9, 22. Citibank argues that the prior order did not address its threshold argument that it lacks privity with plaintiffs Ozer Holdings, LLC ("Ozer") and Joint Properties, LP ("Joint") and therefore cannot be liable on plaintiffs' California Commercial Code section 11207 claims for Citibank's handling of wire transfer requests it received from plaintiffs' bank. Doc. 22. For the reasons set forth below, Citibank's motion for reconsideration, Doc. 22, is granted. This Court's June 23, 2025 order, Doc. 20, is amended as set forth below and Citibank's motion to dismiss, Doc. 9, is granted in full and this action is dismissed with prejudice.

**I.    Background**

Ozer and Joint filed this action against Citibank on February 15, 2024, alleging that Citibank violated California Commercial Code section 11207 and that it also breached its duty of care under California law regarding the bailment of Ozer and Joint's funds. Doc. 1. Plaintiffs allege that they issued instructions to their bank to wire transfer funds to an account at Citibank

1   believing it was the account of plaintiffs' payee, but that an unknown perpetrator had caused
2   plaintiffs to list the perpetrator's Citibank account number rather than the account number for the
3   intended beneficiary of the funds.[1]

4   On May 15, 2024, Citibank filed a motion to dismiss for failure to state a claim under
5   Rule 12(b)(6). Doc. 9. On June 23, 2025, the Court issued an order granting in part and denying
6   in part the motion. Doc. 20. The order denied Citibank's motion as to Ozer and Joint's section
7   11207 claims, finding that Ozer and Joint plausibly alleged that Citibank had actual knowledge of
8   material discrepancies in the wire instructions, and of fraud alerts on the perpetrator's Citibank
9   account, and was therefore not entitled to the safe-harbor provision under section 11207(b)(1).
10  *Id.* at 5–12. The Court granted Citibank's motion as to Joint and Ozer's common law bailment
11  claims, and dismissed them without leave to amend, finding those claims preempted by section
12  11207. *Id.* at 12–14.

13  On July 7, 2025, Citibank filed a motion for reconsideration, arguing that, as to Ozer and
14  Joint's section 11207 claims, the Court did not address Citibank's threshold argument that it
15  cannot be liable under section 11207 because Citibank is not in privity with Ozer and Joint.
16  Doc. 22. Ozer and Joint filed an opposition, to which Citibank replied. Docs. 23, 25.

17  **II.    Legal Standard**

18  Rule 54(b) provides that "any order . . . that adjudicates fewer than all the claims or the
19  rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry
20  of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ.
21  P. 54(b). The Court has discretion under Rule 54(b) to reconsider its prior order where a party
22  has shown sufficient cause. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
23  254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then
24  it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order
25  for cause seen by it to be sufficient.") (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th
26  Cir. 1981)). The Court finds sufficient cause for reconsideration here as its prior order granting in
27
28  [1] The factual background is more fully set out in the Court's June 23, 2025 order. *See* Doc. 20.

2

part and denying in part Citibank's motion to dismiss, Doc. 20, did not address the privity argument that Citibank properly raised in its motion to dismiss. This order addresses that privity argument below.

### III. Discussion

Joint and Ozer's fraudulent wire transfer claims are based on section 11207 of the California Commercial Code. Subdivision (a) of that statute provides that "[s]ubject to subdivision (b), if, in a payment order received by a beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur." Cal. Comm. Code § 11207(a). Section 11207(b) provides various requirements that apply when, as in the present case, "a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons." *Id.* § 11207(b). Plaintiffs argue that Citibank is liable under section 11207(b) because it had actual knowledge of material discrepancies in the wire instructions and of fraud alerts on the perpetrator's Citibank account. Citibank argues that it cannot be liable under section 11207 because it is not in privity with Ozer and Joint. Doc. 22 at 6–8.

Section 11207 codifies Uniform Commercial Code ("UCC") section 4A-207. *TME Enterprises, Inc. v. Norwest Corp.*, 124 Cal. App. 4th 1021, 1025 n.3 (2004). In enacting section 11207, "the [California] Legislature adopted article 4A of the Uniform Commercial Code exactly as written." *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 252 (2007). Neither the Ninth Circuit nor the California Supreme Court has addressed whether there is a privity requirement for claims brought under section 11207. However, because the UCC was "meant to make law uniform among the various jurisdictions," California courts generally "afford great deference to the decisions of [their] sister jurisdictions interpreting its provisions." *In re Bartoni-Corsi Produce, Inc.*, 130 F.3d 857, 861 n.7 (9th Cir. 1997) (quoting *Oswald Mach. & Equip. v. Yip*, 10 Cal. App. 4th 1238, 1247 (1992)).

The Seventh Circuit, construing Indiana's statute setting out the same UCC provision,

found that a privity requirement applied to claims brought under section 207. *Approved Mortgage Corp. v. Truist Bank*, 106 F.4th 582, 590–92 (7th Cir. 2024). In that case, customers of Approved Mortgage directed that wire transfers be paid to a certain company upon the closing of a transaction. *Id.* at 586. However, before Approved Mortgage issued the wire transfer orders, unknown perpetrators illegally accessed Approved Mortgage's system and modified the instructions to substitute a different bank account as the purported account of the beneficiary. *Id.* Approved Mortgage forwarded the now-modified wire transfer instructions to a title company, MVP National Title Company ("MVP"), which in turn issued the wire instructions to its bank, Bank United, to pay the funds to Truist Bank for the listed account and named beneficiary. *Id.* Pursuant to the fraudulently modified wire instructions, Bank United wired funds to Truist, which deposited the funds into the account listed in the instructions. *Id.* However, the account at Truist belonged to a third party who did not match the other identifiers in the instructions, such as the intended beneficiary's name or address, and the wired funds never reached the intended beneficiary. *Id.* Approved Mortgage thereafter paid the beneficiary with its own funds, and MVP assigned to Approved Mortgage any claims it might have against Truist. *Id.* at 587.

Approved Mortgage brought a claim against Truist under Indiana's codification of section 207, seeking a refund of the amount Truist credited to the perpetrators' account pursuant to the wire instructions. *Id.* The Seventh Circuit concluded that Approved Mortgage did not have a cause of action against Truist, finding that "a claim alleging that acceptance was barred under section 207 must look to [UCC] section 402 for its remedy," and that "under section 402(d), a sender is only entitled to a refund from its receiving bank." *Id.* at 589. UCC section 4A-402 ("section 402") "covers the obligation of a sender of a payment order to make payment to the receiving bank after the order has been accepted as well as the obligation of a receiving bank to refund payment in the event the transfer is not completed." *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 100–101 (2d Cir. 1998).

The Seventh Circuit in *Approved Mortgage* noted:

> Section 207 does not state what happens when funds are received by the beneficiary's bank despite the prohibition on acceptance. The statutory language states that acceptance 'cannot occur,' but does

4

>not explain the effect of the non-occurrence. Section 402 provides this answer. It describes how the failure to complete a funds transfer through acceptance by the beneficiary's bank affects the payment obligations of the various parties to the transfer . . . Section 402 thus provides a remedy by which senders are made whole when the beneficiary's bank's acceptance of a payment order could not have occurred.

*Approved Mortg. Corp.*, 106 F.4th at 589.[2]

The plain language of section 402 and the official comments support this interpretation. The section's first subdivision states that "[t]his section is subject to Sections 4A-205 and 4A-207." UCC § 4A-402(a); *see also* Cal. Comm. Code § 11402(a). This provision reflects an intention for section 402 to be read in concert with section 207. *See Hamlin Tec, Inc. v. JPMorgan Chase Bank N.A.*, 785 F. Supp. 3d 340, 351 (N.D. Ill. 2025). Moreover, comment two to section 402 contemplates a scenario identified in section 207, where an "erroneous execution of a payment order by [the originator bank] or an intermediary bank" occurs, due to the bank issuing "its payment order to the wrong bank" or identifying "the wrong beneficiary in its order." UCC § 4A-402, cmt. 2.

In concluding that section 402 requires privity between the sender of the payment order and the receiving bank, the Seventh Circuit endorsed the Second Circuit's holding in *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97 (2d Cir. 1998), which found that section 402 "imposes a privity requirement such that a sender seeking a refund for an uncompleted funds transfer may look only to the receiving bank to whom it issued a payment order and payment." *Grain Traders*, 160 F.3d at 106. There, the Second Circuit noted the official comment to section 402, which states, in relevant part:

>The money-back guarantee [of section 402] is particularly important to Originator if noncompletion of the funds transfer is due to the fault of an intermediary bank rather than Bank A [the Originator's bank]. *In that case Bank A must refund payment to Originator, and Bank A has the burden of obtaining refund from the intermediary bank that it paid.*

---

[2] In addition to the Seventh Circuit, several district courts have agreed that section 402 provides the remedial scheme for violations under section 207. *See Wellton Int'l Express v. Bank of China (Hong Kong)*, 612 F. Supp. 3d 358, 364 (S.D.N.Y. 2020); *Simple Helix, LLC v. Relus Techs., LLC*, 493 F. Supp. 3d 1087, 1101–02 (N.D. Ala. 2020); *Frankel-Ross v. Congregation OHR Hatalmud*, No. 15-civ-6566 (NRB), 2016 WL 4939074, at *3 (S.D.N.Y. Sept. 12, 2016).

*Id.* at 101 (emphasis in original). The Second Circuit found that the "comment makes plain the intent of the Article 4-A drafters to effect an orderly unraveling of a funds transfer in the event that the transfer was not completed, and accomplished this by incorporating a 'privity' requirement into the 'money-back guarantee' provision." *Id.*

In *Approved Mortgage*, the Seventh Circuit endorsed the Second Circuit's view that the privity requirement "advances the UCC drafters' goal of promoting certainty and finality so that the various parties to funds transfers [will] be able to predict risk with certainty and make decisions based on these known risks." *Approved Mortg. Corp.*, 106 F.4th at 591–92 (quoting *Grain Traders*, 160 F.3d at 102). "To allow a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities, and create a risk of multiple or inconsistent liabilities." *Id.*

This case presents a similar posture to that in *Approved Mortgage* and *Grain Traders*. Plaintiffs' complaint alleges that an unknown individual emailed Ozer a letter purporting to be from Hexagram International ("Hexagram"), a company that had previously loaned funds to Ozer totaling $175,000. Doc. 1 ¶ 7. The letter requested that Ozer repay the outstanding loan by sending a wire to a Citibank account purportedly in the name of Hexagram International. *Id.* In reliance on the emailed letter, that same day Ozer directed its bank, Chase Bank ("Chase"), to wire $175,000 from Ozer's Chase account to the Citibank account. *Id.* ¶ 8. The unknown individual also emailed Joint a letter purporting to be from the principal of Hexagram, which had previously loaned funds to Joint totaling $250,000. *Id.* ¶ 9. The letter requested that Joint repay the outstanding loan by sending a wire to the same Citibank account. *Id.* In reliance on the emailed letter, Joint directed Chase to wire $250,000 from Joint's Chase account to the Citibank account. *Id.* ¶ 10. Just as Grain Traders and MVP Title Company (the originators in those cases) were not account holders at, or otherwise in privity with, the banks in those cases that ultimately received the wired funds and deposited them into the purported beneficiaries' accounts, Ozer and Joint (the originators here) were not account holders at Citibank or otherwise in privity with

6

1 | Citibank (the purported beneficiary's bank).[3]

2 | The Court agrees with the analysis in *Approved Mortgage* and *Grain Traders* and finds
3 | that section 207 of the UCC, as codified in section 11207 of the California Commercial Code,
4 | requires privity between the sender of the payment order and the receiving bank where the sender
5 | seeks damages as relief under section 11207.[4] Ozer and Joint are not account holders with
6 | Citibank, and they are not otherwise in privity with Citibank as they issued the wire instructions
7 | to Chase, not to Citibank. Citibank's motion to dismiss plaintiffs' section 11207 claims is
8 | granted as Citibank is not a proper defendant on those claims. Ozer and Joint's section 11207
9 | claims against Citibank are dismissed without leave to amend, as any amendment would be futile.
10 | *See D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094, 1105 (9th Cir. 2024) ("[D]enial of leave to
11 | amend is proper when any supplemental information 'would fail to cure the pleading deficiencies'
12 | in the complaint.") (quoting *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041
13 | (9th Cir. 2011)).

---

[3] While in *Grain Traders* the originator sued an intermediary bank, and in this case the originators (Ozer and Joint) are suing the beneficiary's bank (Citibank), section 402 "makes no distinction between different types of receiving banks." *Approved Mortg. Corp.* 106 F.4th at 591 (rejecting plaintiff's attempt to limit the holding in *Grain Traders* to intermediary banks). The issue is whether the originator is in privity with the bank it is suing, not whether the bank being sued is an intermediary bank or the ultimate receiving bank.

[4] In their opposition, Ozer and Joint cite several cases denying motions to dismiss where the originator directly sued the beneficiary's bank. Doc. 23 at 12–15; *see Serviacero Especiales SA DE CV v. JPMorgan Chase, N.A.*, No. EDCV-21-380-JGB-SPx, 2021 WL 4805447 (C.D. Cal. May 20, 2021); *BPi Bright Power, Inc. v. Umpqua Holding Corp*, 669 F. Supp. 3d 904 (N.D. Cal. 2023); *Grand Bayman Belize, Ltd. v. Wells Fargo Bank, N.A.*, No. 21-55146, 2022 WL 171937 (9th Cir. Jan. 19, 2022); *Sliders Trading Co. L.L.C. v. Wells Fargo Bank, NA*, No. 17-cv-04930-LB, 2017 WL 6539843 (N.D. Cal. Dec. 21, 2017). However, the issue Citibank raises here concerning the lack of privity between the originator and the beneficiary's bank does not appear to have been raised in those cases. Ozer and Joint also cite two cases, from the Southern District of Florida and the Middle District of Florida, that declined to find a privity requirement for claims brought under section 207. Doc. 23 at 12; *see Compressed Air Corp. v. Citibank, N.A.*, No. 1:24-cv-20267-KMM, 2024 WL 5341722 (S.D. Fla. June 7, 2024); *Wheels Investments, LLC v. Wells Fargo Bank, N.A.*, No. 6:19-cv-658-GAP-EJK, 2021 WL 8895130 (M.D. Fla. Apr. 29, 2021). However, those cases were decided before the Seventh Circuit's decision in *Approved Mortgage*, and a more recent Southern District of Florida decision relied on *Approved Mortgage* in finding a privity requirement under section 207. *See AmpliTech Group, Inc. v. Truist Bank*, 746 F. Supp. 3d 1384, 1391 (S.D. Fla. 2024).

### IV. Conclusion and Order

Accordingly:

1. Citibank's motion for reconsideration, Doc. 22, is GRANTED;
2. The Court's order, Doc. 20, granting in part and denying in part Citibank's motion to dismiss, is AMENDED as follows:
    a. Citibank's motion to dismiss, Doc. 9, is GRANTED in full;
    b. This action is DISMISSED with prejudice; and
3. The clerk of Court is directed to CLOSE this case.

IT IS SO ORDERED.

Dated:     October 10, 2025

_____
UNITED STATES DISTRICT JUDGE